# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **VANESSA K. HARDY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. _____** |
| | ) | |
| **PRUDENTIAL LIFE INSURANCE** | ) | |
| **COMPANY OF AMERICA; and** | ) | |
| **SEDGWICK CLAIMS MANAGEMENT** | ) | |
| **SERVICES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Vanessa K. Hardy ("Ms. Hardy") brings this complaint against Sedgwick Claims Management Services, Inc. and Prudential Life Insurance Company of America pursuant to Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), for wrongfully denying her claim for short-term disability benefits.  In support of her complaint, Ms. Hardy would allege as follows:

## PARTIES

1.      Ms. Hardy is a citizen of the State of Tennessee and resident of this district, residing at 5033 Brevity Lane, Nashville, TN 37220.   At all times relevant to this Complaint, Ms. Hardy was employed by the Hospital Corporation of America, Inc. ("HCA") and participated in both short-term and long-term disability insurance plans for HCA employees.

2.      Prudential Insurance Company of America ("Prudential") is an insurance company incorporated in New Jersey and doing business in the State of Tennessee.  Its principle

place of business is at 751 Broad Street, Newark, New Jersey 07102. Prudential acts as the Claims Administrator of the Plan pursuant to a contractual agreement between Prudential and HCA. Prudential may be served at through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Pkwy, Nashville, Tennessee 37243.

3.      Sedgwick Claims Management Services, Inc. ("Sedgwick") is a claims processing company incorporated under the laws of the State of Illinois, with its principle place of business at 1100 Ridgeway Loop Road, Memphis, Tennessee 38120. Sedgwick can be served through its designated agent for service of process, the CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929.

## JURISDICTION

4.      Ms. Hardy brings her claims pursuant to ERISA, 29 U.S.C. § 1132(e)(1), which provides the Court with subject matter jurisdiction.

5.      Venue is proper pursuant to 29 U.S.C. § 1132(e)(2), as Defendant does business in and can be found within this district. *See* 28 U.S.C. § 1391(c).

## FACTS RELATING TO WORK HISTORY

6.      Ms. Hardy began working as Clinical Application Manager at HCA on or about August 16, 2010.

7.      The physical requirements of her job required Ms. Hardy to sit most of the time, *i.e.*, sit for the duration of an 8-hour work day. *See* Job Description, attached hereto as Exhibit A.

8.      While employed with HCA, Ms. Hardy participated in both a short-term disability ("STD") and long-term disability ("LTD") group insurance plan for eligible HCA employees.

9.      On or about April 22, 2013, Ms. Hardy took FMLA leave from HCA when her impairment became severe enough to prevent her from performing her job duties.

10.     Sedgwick approved Ms. Hardy's FMLA leave through July 1, 2013, but denied it after that time.  However, disagreeing with that decision, HCA granted Ms. Hardy leave until October 18, 2013, when Ms. Hardy, realizing that she was not going to be able to return to work, separated from her employment at HCA.

## FACTS RELATING TO MEDICAL CONDITION

11.     Ms. Hardy suffers from an autoimmune disease that causes her persistent and severe joint and muscle pain, particularly in her back, pelvis, hips, knees, and legs.

12.     The first objective evidence of her condition came in the fall of 2010, when Ms. Hardy identified enlarged lymph nodes, and subsequently underwent a biopsy. The biopsy results revealed a probable autoimmune disorder.   Subsequent laboratory tests revealed positive antinuclear antibodies (ANA), which further suggests autoimmune disease.

13.     Marked symptoms of Ms. Hardy's condition surfaced in or about January 2011, when she experienced pain in her hips, legs, sacroiliac joints (lower back/pelvis), and knees.

14.     Ms. Hardy sought care from a rheumatologist, Dr. James Gore, who also referred Ms. Hardy to a number of specialists, including a hematologist/oncologist, a neurologist, and an interventional pain specialist.

15.     Ms. Hardy's condition worsened until, in April of 2013, the chronic and severe pain she suffers made her continued employment impossible.

16.      Despite copious testing and varied treatment attempts, no doctor has been able to give Ms. Hardy a concise medical explanation for her undisputed, debilitating symptoms. However, objective testing clearly points to an autoimmune condition, such as inflammatory or rheumatoid arthritis, and possibly lupus, Kikuchi disease, or a viral infection as well.

17.     Those objective indicators include:  various positive antinuclear antibodies tests (supporting autoimmune disease), pulmonary embolism in 2011 (supporting Kikuchi, lupus, or similar autoimmune disease), and abnormal inflammatory labs (same).

18.     Dr. Gore is Ms. Hardy's treating rheumatologist and continues to treat her on a regular basis.

19.     Since April of 2013, Ms. Hardy has been unable to sit for more than 10 minutes consecutively or stand for more than 30 minutes consecutively due to her condition.

## FACTS RELATED TO CLAIM HISTORY

20.     While seeking FMLA leave, Ms. Hardy also applied for short-term disability benefits under the HCA Health and Welfare Benefits, Short-Term Disability Plan ("STD Plan") on or about April 24, 2013.

21.     In support of her application for benefits, Ms. Hardy submitted an Attending Physician Report from Dr. Gore, which lists three specialists to whom he had referred her.  Ms. Hardy also authorized Sedgwick to request medical records from her various medical providers.

22.     On May 11, 2011, Defendants approved her FMLA leave and awarded her STD benefits from April 22, 2013 until July 1, 2013.

23.     Sedgwick's claim file notes reveal that it granted Ms. Hardy benefits so that Ms. Hardy could consult with several specialists to whom she had been referred.

24.     Despite the fact that Dr. Gore informed Defendants that Ms. Hardy would be unable to return to work for "a year, but likely longer- 5 years or more," Defendants granted her STD benefits for only 10 weeks.

25.     Ms. Hardy advised Defendants of her claim for continued benefits beyond the initial 10-week approval period on or about June 24, 2013.  Defendants denied her claim for continued STD benefits on or about July 8, 2013.

26.     Ms. Hardy initiated an administrative appeal of that denial on or about July 10, 2013.  In support of that appeal, she submitted medical records from Dr. Gore, as well as a note from Dr. Gore explaining that her condition, "severe, chronic arthritis," limits her ability to sit to 10 minutes and stand to 30-40 minutes, "making it impossible for her to maintain employment." She also submitted a job description for HCA's Clinical Application Manager, which lists prolonged sitting and standing as requirements of the position. *See* Exhibit A.

27.     Defendants denied the appeal on or about September 16, 2013.  *See* Letter from Sedgwick to Hardy, dated September 16, 2013, attached hereto as Exhibit B ("Denial Letter"). The letter stated that the denial was Defendants' final decision on Ms. Hardy's STD claim.

28.     In the Denial Letter, Defendants noted that the appeal was based on medical records from Dr. Gore as well as the report of a non-examining consultative rheumatologist, Dr. Bello.  Dr. Bello had reviewed Dr. Gore's records and had spoken with Dr. Gore via telephone.

29.     Defendants never requested medical records from Dr. Gore or any of the three specialists listed on Dr. Gore's Attending Physician Statement.

30.     Defendants concluded that "there is no objective evidence for active rheumatoid arthritis that would warrant any restriction for your job as described, as the information from the rheumatologist did not reveal active disease activity," and based the denial on the fact that "the medical information in the file does not support your inability to perform your own occupation."

31.     In the Denial Letter, Defendants do not express doubt or reservation that Ms. Hardy's subjective symptoms, namely her severe and chronic pain, are credible and real.

Likewise, Defendants have never refuted the sitting and standing limitations placed on Ms. Hardy by Dr. Gore.

32.     The Denial Letter states that Ms. Hardy is "entitled to receive reasonable access to and copies of all documents, records and other information relevant to [her] claim free of charge."  Upon written request for all such records, including the STD Plan document, Sedgwick produced the incomplete documentation attached hereto as Exhibit C ("Claim File").

## CAUSE OF ACTION

### Wrongful Denial of STD Benefits
### (29 U.S.C. § 1132(a)(1)(B))

33.     Ms. Hardy incorporates the allegations contained in paragraphs 1 through 32 into this cause of action as if fully re-alleged herein.

34.     Ms. Hardy brings this claim pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as a participant entitled to a reasonable claims procedure and benefits under the STD Plan.

35.     The STD Plan is governed by two Plan documents, the insurance certificate and the Summary Plan Description ("SPD").  Exhibit C, pp. 54 – 68; Insurance Certificate, attached hereto as Exhibit D.

36.     Under the Plan, a participant is considered disabled if, after the 7-day elimination period, "you [the participant"] are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and you are under the regular care of a doctor; and you have a 20% or more loss in pre-disability earnings due to the same sickness or injury." Exhibit D, at p. 11.

37.     The weekly benefits payable under the Plan are calculated based on years of employment.  However, Ms. Hardy participated in a supplemental insurance program through

her employer that increased her STD benefit to 80% of pre-disability earnings.  Exhibit C, at pp. 63-64.

38.     Benefits under the STD Plan are payable for up to 21 weeks.

39.     HCA is the Plan Administrator, as that term is defined by ERISA.  Prudential is Claims Administrator of the STD Plan.  Exhibit D, at p. MC_000031. Through their contractual arrangement, HCA has delegated certain discretionary duties of a Plan Administrator to Prudential.  Upon information and belief, Prudential has delegated certain discretionary claims administration duties under the Plan to Sedgwick.  *See* Exhibit C, at p. 54.

40.     Ms. Hardy is a Participant in the STD Plan, as that term is defined by ERISA.

41.     ERISA imposes on Defendants the role of fiduciary to all Plan participants.  As such, Defendants have a duty to provide Ms. Hardy with a reasonable claims procedure and full and fair review of her STD claim.  Defendants' review falls short of that standard.

42.     Defendants' decisions are based on the faulty premise that Ms. Hardy required medical leave and STD benefits in order to consult with a number of specialists.  Exhibit C, at p. 9 ("Rationale:  EE will be undergoing tx by 3 additional treaters and will require time off to confirm/treat various dx.") (approving benefits of 10 weeks on that basis).  In fact, Ms. Hardy had already been referred to the three named specialists, as explained in Dr. Gore's statement.

43.     Further, the Denial Letter incorrectly states that Ms. Hardy's functional limitations lack the support of objective findings.  Defendants failed to consider objective testing in the record, including positive ANA test results, biopsy results, and lab results.

44.     Further, Defendants have discounted the findings and opinions of Dr. Gore, Ms. Hardy's long-time treating rheumatologist, in favor of the unsupported findings of a non-

examining, consultative physician. There is no basis in the record to discount the opinions of Dr. Gore, and Defendants have given no reason for doing so.

45.     Further, Defendants failed to consider the opinions of the specialists to whom Dr. Gore had referred her.

46.     Finally, Defendants hastily assert that Ms. Hardy can perform the material functions of her job at HCA without any vocational analysis of her actual job requirements.

47.     Defendants summarily and without explanation discounted Ms. Hardy's functional limitations, namely her inability to sit and stand for even minimal periods, limitations that are supported by both Ms. Hardy's statements and Dr. Gore's opinions in the record.

48.     Defendants completely ignored Ms. Hardy's very real and debilitating symptoms, namely her severe and chronic joint and muscle pain.

49.     Defendants have abused their discretion in denying Ms. Hardy benefits by relying on the lack of a concise diagnosis of her condition, rather than considering whether her very real and credible symptoms make her disabled as defined by the STD Plan.

50.     Defendants' decision flies in the face of the express terms of the STD Plan. The Plan defines disability in terms of reduced functional capacity due to "sickness," as measured by an inability "to perform the material and substantial duties of your regular occupation." The Plan does not define disability by any specific, diagnosed condition. *See* Exhibit B, at p. 55.

51.     While assuming Ms. Hardy's symptoms to be credible, Defendants have never attempted to explain how it is that Ms. Hardy could continue to perform her job as the Clinical Application Manager, which "involves sitting most of the time," given her inability to sit for more than 10 minutes consecutively. *See* Exhibit A, at p. 2.

52.     Defendants failed to consider all evidence submitted by Ms. Hardy in support of her claim.  For example, Dr. Gore's medical records, Dr. Gore's notes and opinions regarding Ms. Hardy's work restrictions, and Ms. Hardy's own testimony is absent from the Claim File, meaning that it was not considered either by Dr. Bello or Defendants in making their decisions.

53.     For all these reasons, Defendants' decision is unreasonable, arbitrary and capricious.

54.     In addition to violating ERISA, Defendants' conduct violates the terms of the Plan itself.  Defendants' final denial letter to Ms. Hardy fails to include, for example, a notice of ERISA rights, as required in the insurance certificate.  Exhibit D, at p. MC_000032.  These violations demonstrate Defendants' complete lack of respect for the reasoned process required by law.

55.     Ms. Hardy has complied fully with the requirements for making a benefits claim.

56.     Ms. Hardy has exhausted the administrative remedies available under the Plan.

**WHEREFORE**, Plaintiff requests:

1.      That service of process be made upon Defendants and that they be required to appear and answer this Complaint within the time prescribed by law;

2.      That a Judgment be entered against Defendants requiring that they pay all benefits owed Ms. Hardy under the STD Plan;

3.      Alternatively, that the matter be remanded to Defendants for a fair decision;

4.      That the Court grant Ms. Hardy reasonable attorney fees, pre-judgment interest and the costs of this cause; and

5.      That the Court grant such further, equitable and/or other relief as it may deem appropriate.

March 6, 2014                                   Respectfully submitted,


                                        /s/  Karla M. Campbell_____
                                        James G. Stranch, III
                                        Karla M. Campbell
                                        Branstetter, Stranch & Jennings, PLLC
                                        227 Second Avenue North
                                        Nashville, Tennessee 37201-1631
                                        (615) 254-8801
                                        jims@branstetterlaw.com
                                        kcampbell@branstetterlaw.com

                                        *Counsel for the Plaintiff*