IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

VANESSA K. HARDY       )
                          )
   v.                )     NO. 3:14-0614
                          )
THE PRUDENTIAL INSURANCE   )
COMPANY OF AMERICA and      )
SEDGWICK CLAIMS MANAGEMENT  )
SERVICES, INC.             )

TO:    Honorable Todd J. Campbell, District Judge

## R E P O R T  A N D  R E C O M M E N D A T I O N

By Order entered December 15, 2014 (Docket Entry No. 58), the Court referred all dispositive motions to the Magistrate Judge for report and recommendation.

Presently pending before the Court are Defendants' Motion for Summary Judgment (Docket Entry No. 53) and Plaintiff's Motion for Judgment on the Administrative Record (Docket Entry No. 56). Set out below is the recommendation for disposition of the motions.

## I. BACKGROUND

Plaintiff, Vanessa K. Hardy ("Hardy"), is a former employee of the Hospital Corporation of America, Inc., ("HCA"). While employed, she participated in HCA's short-term disability plan ("STD Plan") and long-term disability plan ("LTD Plan"). During 2013, she sought and was denied benefits under these plans. Thereafter, she brought this lawsuit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., against Prudential Life Insurance Company of America ("Prudential") and Sedgwick Claims Management Services, Inc. ("Sedgwick"), alleging that she was wrongfully denied disability benefits under both plans. Pursuant

to 28 U.S.C. § 1132(a)(1)(B), she seeks an award of benefits in her favor or, in the alternative, a remand to Defendants for a full and fair review of her benefits claims. See Amended Complaint (Docket Entry No. 26). Both the plans were issued by Prudential as the insurance carrier, and Prudential was the claims administrator for both plans. Pursuant to its rights under its contract with HCA, Prudential delegated the responsibility for processing and deciding benefits claims under the STD Plan to Sedgwick.

## II. FINDINGS[1]

Plaintiff, who is a nurse practitioner, began working for HCA as a Clinical Application Manager on August 16, 2010, and worked until approximately April 20, 2013. The position

---

[1] In referring to the Administrative Record ("AR"), the Court has used the Bates Stamp numbers instead of using page numbers from Docket Entries on the electronic docket. The Court recognizes that the manner in which the Administrative Record was filed in this action has not lent itself to clarity of reference, and the cross reference of Bates Stamp numbers to the Docket Entries is as follows:

Bates 0000-0013 (Docket Entry No 35-3)
Bates 0014-0015 (Docket Entry No. 35-4)
Bates 0016-0018 (Docket Entry No. 35-5)
Bates 0019-0025 (Docket Entry No. 35-6)
Bates 0026-0071 (Docket Entry No. 37-1)
Bates 0072-0126 (Docket Entry No. 35-1)
Bates 0127-0312 (Docket Entry No. 35-2)
Bates 0313-0330 - not provided
Bates 0331-0592 (Docket Entry No. 36-5)
Bates 0593-1026 ( Docket Entry No. 38-1)
Bates 1027-1365 (Docket Entry No. 38-2)
Bates 1366-1691 (Docket Entry No. 38-3)
Bates 1692-2010 (Docket Entry No. 38-4)
Bates 2011-2351 (Docket Entry No. 38-5)
Bates 2352-2692 (Docket Entry No. 38-6)
Bates 2693-3034 (Docket Entry No. 38-7)
Bates 3035-3457 (Docket Entry No. 38-8)
Bates 3458-3700 (Docket Entry No. 38-9)
Bates 3701-3733 (Docket Entry No. 36-1)
Bates 3734-3747 (Docket Entry No. 36-4)
Bates 3748-3754 (Docket Entry No. 35-7)
Bates 3755 (Docket Entry No. 37-2)
Bates 3756 (Docket Entry No. 36-2)
Bates 3757-3774 (Docket Entry No. 35-7).

description described her job as involving sedentary work, which is described as "sitting most of the time" with walking and standing only required occasionally. AR 3443-3445. There is nothing in the Administrative Record that indicates that her job was not, in fact, primarily sedentary with occasional walking and standing.

In 2010 and 2011, Plaintiff began suffering from health problems, which included enlarged lymph nodes, a pulmonary embolism, and pain in her hips, legs, lower back, pelvis, and knees. Over the next four years, Plaintiff saw several medical providers and specialists and underwent various forms of testing and treatment for these problems. The Administrative Record contains hundreds of pages of medical records documenting these visits. A biopsy of the lymph node and laboratory testing, which revealed positive anti-nuclear antibodies ("ANA"), suggested that she might have an autoimmune disorder, such as lupus or Kikuchi's disease. AR 0771. Dr. James Gore, a rheumatologist, who began treating her during this time period and thereafter acted as her primary treating physician for these problems, assessed her on March 1, 2012, as having, among other things, positive ANA, inflammatory arthritis that could be due to a viral illness or Kikuchi's disease, fatigue, and elevated erythrocyte sedimentation rate ("ESR"), which is an indicator of inflammation in the body. AR 3202-3203. He ordered a battery of laboratory tests, prescribed medications for her, and scheduled her to be rechecked and monitored periodically. In follow-up visits on May 3, 2013, and July 19, 2013, Dr. Gore's assessment of Plaintiff and his treatment plan for her remained essentially unchanged from his prior assessment and plan. AR 0565-0568; AR 3526-29. Despite Plaintiff's being seen by several specialists in an effort to treat her health problems and diagnose their source, no definitive cause of her symptoms was determined. In a Rheumatology report, dated January 25, 2013, Dr. Kevin G. Moder of the Mayo Clinic, where Plaintiff was seen by several different physicians, stated that there was no "clear unifying diagnosis for her symptoms," but that further testing was warranted. AR 3518-3519. After April 19, 2013, Plaintiff stopped going to work at HCA because of her health issues.

As an employee of HCA, Plaintiff was covered by the HCA Health and Welfare Benefits Plan ("the HCA Plan"), which provides for both the STD Plan and the LTD Plan. AR 0077. The STD Plan provides for a fourteen day elimination period, AR 3713, and defines "disabled" as follows:

> [d]uring the elimination period, you are disabled when Prudential determines that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; you are under the regular care of a doctor, and you are not working at any job for which you are reasonably fitted by your education, training or experience.

AR 3711 (emphasis excluded). Upon the conclusion of the elimination period, the STD Plan provides that:

> you are disabled when Prudential determines that you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and you are under the regular care of a doctor; and you have a 20% or more loss in monthly earnings due to the same sickness or injury.

Id. (emphasis excluded). The STD Plan further describes "Material and Substantial Duties" as "duties that are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified" and "Regular Occupation" as "the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location." AR 3711-12.

The LTD Plan defines "disabled" as follows:

> [y]ou are disabled when Prudential determines that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and you are under the regular care of a doctor; and you have a 20% or more loss in monthly earnings due to the same sickness or injury.

AR 0040 (emphasis excluded). "Material and Substantial Duties" are defined as follows: "duties that are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified." Id. "Regular Occupation" is defined as follows: "the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed in the national economy instead of how the work tasks are performed for a

4

specific employer or at a specific location. An occupation that provides you with less than 60% of your monthly earnings is not considered your regular occupation." Id.

The HCA Plan specifically incorporates the summary plan description ("SPD") for the benefit programs. Id. The SPD identifies Defendant Prudential as the Claims Administrator for the short and long term disability benefits plans. AR at 0309. Pursuant to the terms of the Group Contract between HCA and Prudential, Prudential delegated the claims administration for the STD Plan to Defendant Sedgewick. AR 11, 19-25, and 3734-3747.

On or about April 24, 2013, Plaintiff applied for short-term disability ("STD") benefits under the STD Plan. AR 0458-0462. She reported that she was prevented from working because she "had joint pain," was "waiting for a diagnosis," and that her "physician placed her on total disability." AR 0461. Dr. Gore subsequently submitted an Attending Physician Statement of Claim for Disability Benefits in support of her claim opining that she was unable to sit for more than ten minutes or stand for more than 40 minutes due to severe pain. AR 0476-0477. By letter dated May 15, 2013, Plaintiff was notified that her claim for STD benefits was approved from April 22, 2013, through July 1, 2013,[2] and that she was also approved for leave from work for this time period under the Family Medical Leave Act. AR 0480.

On June 24, 2013, Plaintiff sought continued STD benefits but this request was denied by letter dated July 8, 2013, "because the medical received from your physician(s) did not support the leave of absence due to disability." AR 0482. Although the letter does not contain any other specific information about the denial decision, the Administrative Record shows that, on July 2, 2013, Dr. Dennis Payne, a board certified internist and rheumatologist with Network Medical Review Company, issued a medical review report for Sedgwick after speaking to Dr. Gore. AR 0493-0485. Dr. Payne concluded that the objective data in the file, which was noted as consisting of only the May 3, 2013, Attending Physician Statement provided by Dr. Gore in support of Plaintiff's claim

---

[2] Although the letter in the AR indicates that June 1, 2013, is the ending date of approved benefits, AR 0480, the parties are in agreement that July 1, 2013, is the correct date. See Docket Entry No. 61, at 13, ¶ 38, and Docket Entry No. 57, at 20, n.8.

for benefits, "is not supportive of findings that would be restricting or limiting from a rheumatology viewpoint. Therefore, she would be expected to be capable of performing her regular job unrestricted." AR 0494. At the time of his review, Dr. Payne had been unable to contact Dr. Ruth Young, Dr. Garrison Strickland, or Dr. Kurt Ditrich, each of whom were medical care providers to whom Dr. Gore noted he had referred Plaintiff. AR 0493-0494.

On July 10, 2013, Plaintiff appealed the denial of STD benefits, stating:

> I am unable to sit or stand due to severe joint pain. Thus, I am unable to perform essential functions of my job and am unable to work. Please see the attached order from my physician, Dr. James Gore. If you deny this appeal, please provide me with details regarding how I may complete the essential functions of my job when I cannot sit or stand. Thank you.

AR 0488. Included in her appeal was a physician order form from Dr. Gore in which he states "she has severe, chronic arthritis. She is unable to sit for more than 10 minutes without pain or stand for more than 30-40 minutes, making it impossible for her to maintain employment. Please consider her appeal for disability." AR 0489. Plaintiff supplemented her appeal with additional medical records from Dr. Gore created on May 3, and July 19, 2013. AR 0498-0504. As part of the review process, Sedgwick submitted Plaintiff's appeal and supplemental medical records to Dr. Alfonso Bello, a board certified rheumatologist, for an independent medical review. Dr. Bello issued an initial report on August 14, 2013, concluding that there was no objective medical evidence for active rheumatoid arthritis that would warrant any restrictions or limitations on Plaintiff's job duties and, thus, Plaintiff was not disabled. AR 0570-0574. After Dr. Bello spoke with Dr. Gore about Plaintiff, he issued a supplemental report on September 4, 2013, in which his conclusions remained the same as in his initial report. AR 0578-0580.

On September 16, 2013, Plaintiff's administrative appeal was denied. AR 0581. The letter, signed by David Daus, Appeal Specialist, denying the appeal stated:

The following Plan provision was taken into consideration:

> Disabled: You are considered to be Partially or Totally Disabled if after the 7 calendar day Elimination Period, you are unable to perform the material and substantial duties of your regular occupation due to a non work-related sickness or injury; you are under the regular care

of a physician, and have a loss of 20% or more in weekly earnings due to the same sickness or injury. Loss of a professional or occupational license does not, in itself, constitute Disability. The Disability must be supported by Objective Medical Evidence provided by an Eligible Provider. A determination of Disabled Status under this Plan does not constitute a determination that an individual is disabled for any other purposes.

In order to complete the appeal, the unit reviewed the medical records from Dr. James Gore, M.D. dated May 3, 2013, through July 19, 2013.

Your file was reviewed by independent specialist, Alfonso Bello, M.D., who is board certified in Rheumatology. The specialist noted that the medical documentation submitted did not provide medical findings to support a severity to have precluded you from functioning from your regular unrestricted job duties.

Dr. Bello . . . was able to speak with your physician regarding your work status. Dr. Gore felt the you were not capable of any duty based on your chronic back pain, which had been refractory to aggressive medical management. Dr. Gore indicated that he has referred you to other specialists including pain management, orthopedic surgery, and physical therapy with no clear improvement. No additional information was provided.

From a rheumatology standpoint based on the medical documentation provided for review and from a completed teleconference with Dr. Gore, you were noted as being diagnosed with seronegative rheumatoid arthritis, positive ANA and back pain and also had a noted history of positive ANA with otherwise negative serologies. Furthermore, it was mentioned that you had an enlarged lymph node in your axilla and a biopsy demonstrated an inflammation, suggestive of Kikuchi's disease or lupus. While you had pruritus and hives, it was controlled with Claritin. It was documented that you had epidural steroid injections and that your back symptoms improved some as well as your knee pain. Unfortunately, however, despite your ongoing treatment, there is no objective evidence for active rheumatoid arthritis that would warrant any restriction for your job as described, as the information from the rheumatologist did not reveal active disease activity.

Thus, as the medical information in the file does not support your inability to perform your own occupation, as defined by the Plan quoted above, we have no alternative other than to reaffirm the denial of benefits for the period of July 2, 2013, through your return to work date.

This represents the Time Away From Work Service Center Appeals Unit final decision with respect to your STD claim.

AR 0581-0582.

In addition to seeking STD benefits, Plaintiff applied for benefits under the LTD Plan on

July 24, 2013, asserting "rheumatoid arthritis - all over" as the description of the medical reason for

her claim. AR 3691-3700. Subsequent to her application, Plaintiff submitted an attending physician

statement from Dr. Gore in which he described her limitation as "Patient is unable to perform the essential functions of her job secondary to severe joint pain. She cannot sit for more than 10 min, and cannot stand. For this reason, she is unable to work." AR at 3606. Plaintiff also provided a portion of her medical records.

By letter dated September 19, 2013, Plaintiff's claim for LTD benefits was denied. AR 3676. After noting that "our clinical team has reviewed the medical records in the file from Irina Didier, MD Primary Care Physician (PCP), James Gore, MD Rheumatology, Vanderbilt Pain Clinic, and Mayo Clinic," AR 3677, and setting out a summary of the medical information reviewed, AR 3678, Prudential stated as the basis for the denial:

> Based on the clinical review of the objective medical documentation received, there are no findings on the physical examinations of synovitis, joint pain or restriction of range of motion to indicate a systemic arthritic process. At the Mayo Clinic Rheumatology evaluation, the physical examination found no active synovitis in any joints of the upper lower extremities. You had excellent range of motion of the lumbar spine on flexion. The examiner was unable to reproduce pain of the SI joints or the pain of the left issue area with palpation and your gait was normal. You were able to heal and toe walk without difficulty and the Mayo Clinic consultation was unsure if there was even a unifying diagnosis.
>
> As we have determined that the information in your file does not support impairment that would prevent you from performing material and substantial duties of your regular occupation, we have denied your claim for LTD.

AR at 3679.

Although the September 19, 2013, letter, does not specifically refer to it, the Administrative Record shows that on September 12, 2013, Dr. Jonathan Mittelman, a physician board certified in occupational and environmental medicine, issued a clinical medical report, at the request of Prudential.[3] After he conducted a file review of Plaintiff's application for benefits, Dr. Gore's

---

[3] The Administrative Record does not contain a copy of the actual signed report from Dr. Mittelman, but merely what appears to be an electronic record of his report, and as Plaintiff points out, see Docket Entry No. 61, at 17, ¶ 56, Dr. Mittelman's affiliation with Prudential is not entirely clear from the Administrative Record. Nonetheless, it is apparent that the file was referred to Dr. Mittelman for review as part of the benefits decision process, see AR 3633, and that passages from Dr. Mittelman's report were included verbatim in the September 19, 2013, letter. Accordingly, the Court finds that Dr. Mittelman's report was generated for and used in the initial decision by Prudential denying LTD benefits.

supporting statement, records from Plaintiff's visit to the Mayo Clinic in January 2013, Plaintiff's visit with Dr. Kurt Ditrich at the Vanderbilt Hospital Pain Center in May 2013, Plaintiffs' annual physical with Dr. Irnia Didier in May 2013, Plaintiff's visit with a nurse practitioner in June 2013, and visits with Dr. Gore in February, May, July, and August of 2013, AR 3624-3631, Dr. Mittelman made several conclusions, including that:

> There are no imaging, laboratory, or physical exam findings of a diagnosis which would explain her symptoms and her self-reported limitations.

and

> Claimant had only self-reported limitations in so far as her capacity to sit, stand or walk for any length of time. There are no findings of any pathology that would produce limitations the claimant reports that she has.

AR 3630, and

> Other than the repeated exams by Dr. Gore, in which she (sic) states that the claimant stand because she states that it hurts too much to sit, there are no findings in the record including imaging, labwork, physical exams which would support her self-reported limitation of inability to sit for any length of time.

AR 0361.

On October 30, 2013, Plaintiff appealed the denial of LTD benefits. Substantial medical records for Plaintiff, both current and past, were provided to Prudential. An Activities of Daily Living questionnaire completed by the Plaintiff was also provided. AR 0632-0642. Prudential did require Plaintiff to participate in a physical examination as part of its review. Pursuant to Prudential's request, Plaintiff's medical records were independently reviewed on January 31, 2014, by Dr. Ibrahim Alghafeer, a physician board certified in internal medicine with a sub-speciality in rheumatology, AR 0614-0630, and on March 7, 2014 by Dr. Sushil Sethl, a physician board certified in occupational medicine, general surgery, and thoracic surgery. AR 0600-0612. The reports of both physicians indicate that they reviewed substantial amounts of Plaintiff's medical records going back to 2005, and both physicians ultimately concluded that Plaintiff did not have any restrictions or limitations on her work duties and that the objective medical evidence did not support Dr. Gore's assessment that Plaintiff was disabled.

By letter, dated, March 16, 2014, Prudential denied Plaintiff's appeal. AR 3654-3657. In the denial letter, Prudential stated:

> We have received your first request to appeal our decision to deny your claim for LTD benefits. In your appeal, you indicate your treating physician Dr. James Gore has recorded that you are unable to sit for more than 10 minutes or stand for more than 15 minutes. This physical functional limitation is recorded in your medical records and supported by the letter from Dr. Gore. You state your complete record was not reviewed and you provided additional records for review. You state because you are unable to sit, you cannot perform your job. We have thoroughly evaluated the medical information on file, as well as the documentation received with your appeal.
>
> As part of the appellate review of your claim, the available medical data in your administrative record was referred to an independent external physician of the purpose of performing a medical file review. The physician who reviewed the available medical data is Board Certified in Rheumatology (hereinafter referred to as "rheumatology-reviewer"). Your file also underwent a separate review by an independent external physician board certified in Occupational Medicine (hereinafter referred to as "occupational medicine-reviewer"). Your (sic) Although all available medical data was reviewed, not all medical data will be referenced in the content of this letter.

After setting out the summaries of the independent reviewers and the physical requirements for the Plaintiff's job at HCA, the letter stated:

> We have completed our review of your request for reconsideration of your claim. We have reviewed the information in your file as well as information submitted in support of your appeal. We have considered the opinions expressed by your treatment providers as well as your self-report of functioning. As noted above you (sic) claim file was reviewed by a physician board certified in Rheumatology and a separate review by a physician board certified in Occupational Medicine who provided their opinions as to your functional capacity.
>
> The review of your claim reveals your discontinued working due to your report of pain in your left hip and knees. You indicate your physician, Dr. Gore has recorded that you are unable to sit more than 10 minutes or stand more than 15 minutes. This physical functional limitation is recorded in your medical records and supported by the letter from Dr. Gore. As noted above, based on the independent external files reviewed, these restrictions are not supported by the clinical documentation imaging studies or physical exams. Your thorough orthopedic and rheumatologic evaluation has been negative. There is no evidence of synovitis or significant restrictions of motion. Your imaging studies, bone scan, and nerve conduction studies/electromyograms have been unremarkable. The opinion supporting no restrictions and limitations based on the objective medical information is consistent between three physician reviewers (the third is the Prudential on site physician). After reviewing your entire file, we have determined that you are not precluded from performing your regular occupation and do not meet the definition of disability. As a result, we have upheld our decision to deny your claim for LTD benefits.

AR 3655-3657.[4]

As was her right under the LTD Plan, Plaintiff chose not to pursue a second level of appeal from the denial of LTD benefits.

## III. CONCLUSIONS

A. The Proper Standard of Review[5]

The parties dispute the standard of review that applies in this action. Under ERISA, judicial review of the denial of benefits uses a "de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the de novo standard applies, the reviewing court gives a "fresh consideration" to the administrative record in order to "to determine whether the administrator or fiduciary made a correct decision." Perry v. Simplicity Eng'g, 900 F.2d 963, 966 (6th Cir. 1990). De novo review does not require the district court to give any deference to the fiduciary's determination of benefits or to apply a presumption as to the correctness of the fiduciary's decision. Id. Not surprisingly, this is the standard Plaintiff argues should apply.

Defendants, on the other hand, contend that an arbitrary and capricious standard of review should apply. Under this standard, the decision to deny benefits will pass muster if the decision is rational in light of the plan's provisions. Marks v. Newcourt Credit Grp., Inc., 342 F.3d 444, 456-57 (6th Cir. 2003). The Sixth Circuit Court of Appeals has described the arbitrary and capricious standard of review as requiring that the decision be upheld "if it is the result of a deliberate,

---

[4] Plaintiff contends that the March 16, 2014, letter contained in the Administrative Record differs from the final denial letter, dated March 16, 2014, that she actually received from Prudential. See Docket Entry No. 57, at 17 n.7. This issue is discussed in Section III(c) infra.

[5] Although the Defendants have filed a motion for summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure, the Sixth Circuit Court of Appeals has held that summary judgment procedures, which determine whether there are genuine issues of material fact for trial, are inapposite to ERISA actions to recover benefits and, thus, should not be utilized in their disposition. Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 619 (6th Cir. 1998).

principled reasoning process and if it is supported by substantial evidence." Glenn v. MetLife, 461 F.3d 660, 666 (6th Cir. 2006) (quoting Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991)).

Which standard of review applies depends on whether the language of the benefit plan at issue grants the plan administrator discretionary authority to determine eligibility for benefits or to construe plan terms. Firestone Tire & Rubber Co., 489 U.S. at 115. In order for the arbitrary and capricious standard of review to apply, "the plan must contain 'a clear grant of discretion [to the administrator] to determine benefits or interpret the plan.'" Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998) (en banc) (quoting Wulf v. Quantum Chem. Corp., 26 F.3d 1368, 1373 (6th Cir. 1994) (emphasis in original)).

After review of the relevant documents, the Court agrees with Defendants' position on this issue. The HCA Health and Welfare Benefits Plan ("the HCA Plan"), which provides for both the STD Plan and the LTD Plan, specifically incorporates into the HCA Plan the summary plan description ("SPD") for the benefit programs. AR 0077. Thus, reference to both the language contained in the HCA Plan document and in the SPD for the benefit plans is appropriate. Contrary to Plaintiff's argument, the HCA Plan and SPD contain numerous provisions that evidence a clear grant of discretion to Defendant Prudential to determine claims and interpret the HCA Plan with respect to short and long term disability benefits. Section 1.10 of the HCA Plan designates Prudential, as the insurance company, to be the Claims Fiduciary and named fiduciary for insured benefit programs such as the STD Plan and LTD Plan[6] and specifically delegates to the Claims Fiduciary the "final discretionary authority to interpret the terms of the Plan and decide questions of fact, as necessary to make a determination as to whether the Claims presented to the Claims Fiduciary are payable, in whole or in part, in accordance with the terms of the plan." See AR 0079-

---

[6] Appendix D to the HCA Plan specifically denotes the short and long term disability benefits plans as insured, as opposed to self-funded, programs. AR 0124. The SPD further identifies Defendant Prudential as the Claims Administrator for the short and long term disability benefits plans. AR 0309.

0080. The SPD likewise specifically provides for a clear grant of discretionary authority to Defendant Prudential as indicated by the following provisions:

> All claims and appeals are handled by Prudential. Prudential has absolute discretion in deciding claims and appeals. HCA does not decide claims or appeals.

AR 0233; and

> For insured benefits . . . all claim decisions are made by the insurance carrier or HMO. No claims decisions are made by HCA. Furthermore, HCA has delegated all authority to interpret and apply contract terms, claims decisions, and appeal processes to the insurance carrier, HMO or Dental HMO.

AR 0292. The appeal process for the denial of short and long term disability benefits claims is also specifically delegated to the Claims Administrator, i.e., Defendant Prudential. AR 0299.

The specific and clear grants of discretionary authority to Defendant Prudential to determine eligibility for benefits and construe the terms of the benefits plans are sufficient to bring this case within the scope of review under the arbitrary and capricious standard of review. See Farhner v. United Transp. Union Discipline Income Prot. Program, 645 F.3d 338, 342 (6th Cir. 2011); Univ. Hosps. of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 846 (6th Cir. 2000); Gamble v. Prudential Disability Ins. Co., 2015 WL 2374091, *2 (M.D. Tenn. May 18, 2015) (Haynes, J.); Evans v. Am. Express Fin. Corp. Long-Term Disability Plan, 2003 WL 23126327, *6 (M.D. Tenn. Nov. 5, 2003) (Campbell, J.).


B. The Arbitrary and Capricious Standard

This standard is the least demanding form of judicial review of an administrative action, McClain v. Eaton Corp. Disability Plan, 740 F.3d 1059, 1064 (6th Cir. 2014), and the decision regarding benefits must "be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." Baker, 929 F.2d at 1144. A plan administrator's decision on eligibility for benefits is not arbitrary and capricious if it is rational in light of the plan's provisions. Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 984 (6th Cir. 1991). When it is possible to offer a

reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. Davis ex rel. Farmers Bank & Capital Trust Co. of Frankfort, Ky. v. Ky. Fin. Cos. Ret. Plan, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks omitted), cert. denied, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990). On the other hand, a decision is arbitrary or capricious if it lacks substantial evidence, reveals a mistake of law, or is made in bad faith. Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1282 (10th Cir. 2002).

Review under the arbitrary and capricious standard is extremely deferential and requires that the administrator's decision be upheld as long as it is rational in light of the plan's provision, as well as reasonable with no abuse of discretion. McClain, supra; Caldwell, supra. The arbitrary and capricious standard of review "is not, however, without some teeth." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003) (citation omitted). Deferential review does not mean no review, and "deference need not be abject." Id. (citation omitted). The Court is obligated to review the quality and quantity of the medical evidence and opinions on both sides of the issue. Glenn, 461 F.3d at 666; McDonald, 347 F.3d at 172. Nonetheless, as noted by the Sixth Circuit in McClain, "an 'extremely deferential review' to be true to its purpose, must actually honor an 'extreme' level of 'deference' to the administrative decision." McClain, 740 F.3d at 1064.

In its review, the Court is confined to review of the record that was before the claims administrator at the time the decision was rendered to deny benefits. Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 615 (6th Cir. 1998). The ultimate issue is not whether discrete acts by the claims administrator were arbitrary and capricious, but whether the decision to deny benefits was arbitrary and capricious. Evans v. UnumProvident Corp., 434 F.3d 866, 876 (6th Cir. 2006) (quoting Spangler v. Lockheed Martin Energy Sys., Inc., 313 F.3d 356, 362 (6th Cir. 2002); Molodetskiy v. Nortel Networks Short-Term & Long-Term Disability Plan, 594 F.Supp.2d 870, 884-85 (M.D. Tenn. 2009).

Plaintiff contends that she provided sufficient proof of her disability under the terms of the STD and LTD Plans. Specifically, she contends that the reports from Dr. Gore, her long-term treating rheumatologist, clearly and unequivocally support a conclusion that she suffers from rheumatoid arthritis, as well as likely an auto-immune condition, which cause her to have significant functional limitations on her ability to sit and stand and render her unable to maintain employment. She argues that the Defendants chose to arbitrarily give more weight to the opinions of the non-treating physician reviewers than to the opinion of Dr. Gore, who actually saw and treated her over the course of several years. She also asserts the medical reviewers, despite never having examined her, made inappropriate credibility determinations by discounting her subjective complaints of pain. Plaintiff further contends that the records from the other medical providers who treated and/or examined her are consistent with Dr. Gore's conclusion that she has rheumatoid arthritis and an auto-immune condition. To the extent that Defendants' decisions to deny benefits were based upon the lack of a precise diagnosis for her symptoms, she contends that the terms of the benefits plans do not require her to provide evidence of a specific, identifiable diagnosis.[7]

Essentially, Plaintiff contends that the evidence in the Administrative Record supporting her claims was ignored, and that the conclusions of the medical reviewers are based on selective pieces of medical evidence and are not supported by the overall medical evidence contained in the Administrative Record. As evidence that Defendants' review of her medical record was not full and fair and should be overturned, Plaintiff points to the brevity of the reports referenced in the decision to deny STD benefits and to factual errors and inaccuracies contained in the reports of Dr. Sethl and Dr. Afghafeer that were used in the decision on LTD benefits. Plaintiff also points to procedural

---

[7] When a defendant acts under a potential conflict of interest because it is both the decisionmaker and the payor of a claim, the Court must consider this possible conflict as a factor in the ultimate analysis of whether the defendant has acted arbitrarily and capriciously. Calvert v. Firstar Fin., Inc., 409 F.3d 286, 292-93 (6th Cir. 2005). However, Plaintiff has not raised this issue, let along made a showing that self-interest on the part of the Defendants actually affected or motivated the decisions at issue. See Cooper v. Life Ins. Co. of N. Am., 486 F.3d 157, 165 (6th Cir. 2007).

irregularities as a basis for her contention that Defendants did not afford her a full and fair review process. She contends that, subsequent to the final decisions to deny benefits, neither Defendant provided her with a complete copy of the STD and LTD claims files upon her requests as is required by ERISA. Finally, Plaintiff argues that Defendant Sedgwick engaged in shifting rationales for its decisions when it initially approved her for STD benefits for the reason that additional time was necessary for diagnosis and treatment but failed to refer to this reason in its subsequent determination that she was not disabled under the STD Plan and not entitled to benefits.[8]

Given the deferential standard of review applicable to the Court's analysis as reaffirmed in McClain, the Court finds that the Defendants' decisions to deny Plaintiff benefits under the STD and the LTD Plans were not arbitrary and capricious. Despite Plaintiff's arguments to the contrary, the Court finds that the benefits decisions were the result of a deliberate, principled reasoning process that is supported by substantial evidence in the Administrative Record and is rational in light of the Plan's provisions. Although Plaintiff has pointed to some deficiencies in the deliberative process that weigh in her favor and although the medical evidence supporting Defendants' decision was not overwhelming, there is simply insufficient evidence upon which to conclude that Defendants' benefits decisions were arbitrary and capricious.

The Administrative Record reflects that the Defendants accepted all proof offered by Plaintiff, considered all the medical information submitted by Plaintiff and Dr. Gore, and advised Plaintiff of her responsibility to submit medical information to support her claims. In addition, the Administrative Record reflects that the Defendants did not merely rely upon the conclusions of its own, in-house staff, but submitted Plaintiff's medical records to independent medical reviewers who engaged in an independent review of Plaintiff's medical records, spoke to Dr. Gore, and made attempts to speak to other medical care providers who examined Plaintiff. This case does not involve a plan administrator ignoring evidence that was submitted, refusing to consider the treating

---

[8] Plaintiff also argues that Defendant Sedgwick failed to properly certify that the Administrative Record filed with the Court for the STD decision was the complete Administrative Record. This failure was later rectified by Defendant. See Docket Entry No. 59-1.

physician's opinion, or relying on only its own staff in the deliberative process. Review of the Administrative Record shows that the Defendants engaged in a comprehensive and deliberative review of the evidence. See Cook v. Hartford, 2013 WL 1873336, *4 (M.D. Tenn. May 6, 2013) (Campbell, J.).

Review of the Administrative record also shows that Defendants offered reasoned explanations for the decisions to deny benefits, and that the decisions were rational in light of the medical reviews, the documentation in the Administrative Record, and the terms of the benefits plans at issue. Contrary to Plaintiff's argument, Defendants did not act arbitrarily in not crediting Dr. Gore's opinion that Plaintiff was disabled. Clearly, Dr. Gore's conclusions were evidence in support of Plaintiff's claims. However, the Administrative Record also contains evidence that is either not supportive of Plaintiff's claims or is capable of different interpretations. While it is apparent that Plaintiff does suffer from documented medical issues, despite several years of examination and treatment by various medical care providers, the reports from these medical care providers are not conclusive as to a disabling condition, and there is no evidence from these medical care providers that Plaintiff suffered from the type of limiting restrictions that Dr. Gore concluded were present. The file reviewers, upon whose reports Defendants made their decision to deny benefits, reviewed the medical records that were before them and pointed to and relied on objective medical evidence that was contrary to a conclusion that Plaintiff suffered from significantly limiting pain. This evidence includes medical records showing a lack of active synovitis, sacroiliitis, or ankylosis, no joint tenderness, no evidence of muscle atrophy, unremarkable imaging and scans, and normal gait and range of motion. In a situation involving conflicting evidence, Defendants' decisions to rely upon certain evidence as opposed to other evidence is neither arbitrary or capricious:

> Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

McDonald, 347 F.3d at 169.  While the Court acknowledges, as Plaintiff points out, that there are some factually inaccurate statements in the reports of Dr. Sethl and Afgafeer that were relied upon by Prudential in the decision on LTD benefits,[9] the Court does not find that these inaccuracies are either so significant in scope or so overwhelming in number, when viewed in conjunction with the entire scope of the medical reviews at issue, that they render the medical review reports either inherently unreliable or render the ultimate decision to deny benefits arbitrary and capricious.

The Court does not find that the file reviewers made inappropriate credibility determinations when discounting Plaintiff's subjective complaints of limiting pain.  Plaintiff's complaints were not arbitrarily dismissed.  Instead, Plaintiff's subjective complaints of pain were acknowledged, but were assessed by the file reviewers and deemed to be inconsistent with the objective medical evidence. Defendants were entitled to review the full record and make considered determinations as to the Plaintiff's complaints of limiting pain.  Frazier v. Life Ins. Co. of N. Am., 725 F.3d 560, 570 (6th Cir. 2013), cert. dismissed, __U.S.__, 134 S. Ct. 1057, 188 L. Ed. 2d 144 (2014).    It was not unreasonable for Defendants to base their decisions on a lack of objective proof supporting Plaintiff's assertions of significantly limiting pain.  See Huffaker v. Metropolitan Life Ins. Co., 271 Fed.App'x 493, 500 (6th Cir. 2008) (defendant did not act unreasonably in requiring objective evidence of disability). Nor does the Court find that Defendants required Plaintiff to provide evidence of a specific diagnosis.  While the file reviewers undisputedly noted that no specific unifying diagnosis had been identified for Plaintiff's symptoms, the lack of a diagnosis was not the determining factor in their decision that Plaintiff was not disabled under the Plans.

---

[9] Plaintiff points to three statement in the report of Dr. Afghafeer and ten statements in the report of Dr. Sethl that she contends are erroneous or factually inaccurate.  See Docket Entry No. 57, at 14-15.  One of the entries of Dr. Afghafeer appears to be a typographical error and Plaintiff objects to one entry as irrelevant, not inaccurate.  Id.  Of the ten entries noted for Dr. Sethl, Plaintiff objects to one entry as irrelevant, not inaccurate, two entries involve incorrect dates, and one entry involves the incorrect naming of a medication.  Of the remaining six entries, four entries appear to involve objections to Dr. Sethl's interpretation of medical evidence, as opposed to his making a statement that is clearly contrary to the medical record, and Plaintiff contends that the entry regarding Plaintiff's suggested treatment to take baby aspirin is misleading.  Only a single entry is noted as being clearly contrary to the medical evidence in the Administrative Record.  Id.

With respect to Plaintiff's claim that the Defendants failed to credit the evidence of Plaintiff's own treating physician, the Supreme Court has held that plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinion of a treating physician. <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S.822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). However, the Court cannot require plan administrators "automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physicians evaluation." <u>Id</u>. As addressed above, there is nothing in the Administrative Record to indicate that the Defendants arbitrarily refused to credit the evidence furnished by Plaintiff in support of her claim, including the opinion of Plaintiff's treating physician. The reviewing physicians pointed to specific medical evidence in the record to support their conclusions that Plaintiff's complaints of pain and the limitations offered by Dr. Gore were not supported by objective medical evidence. This is not arbitrary and capricious. Reliance upon physicians other than a treating physician is reasonable so long as the treating physician's opinions are not totally ignored. <u>Black & Decker Disability Plan</u>, 538 U.S. at 834. <u>See also</u> <u>Curry v. Eaton Corp.</u>, 400 Fed.App'x 51, 60 (6th Cir. 2010) (defendant can resolve conflicts between differing opinions if it provides reasons for adopting the alternative opinions that are consistent with its responsibility to provide a full and fair review of a claimant's claim).

Although the fact that Defendants used medical records reviews rather than a physical examination of Plaintiff "is a factor to be considered in reviewing the propriety of an administrator's decision regarding benefits." <u>Evans</u>, 434 F.3d at 877; <u>Kalish v. Liberty Mutual</u>, 419 F.3d 501, 508 (6th Cir. 2005), there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." <u>Calvert v. Firstar Fin., Inc.</u>, 409 F.3d 286, 296 (6th Cir. 2005). Further, unless the language of the plan at issue requires it, a defendant is not obligated to perform a physical examination of a plaintiff claiming benefits. <u>See</u> <u>Frazier</u>, 725 F.3d at 570.

Plaintiff's other arguments for why Defendants' benefits decisions should be viewed as arbitrary and capricious are unpersuasive. The Court does not find that Defendants' failure to provide the complete claims files subsequent to their final decisions, even if true, either renders their decisions per se arbitrary and capricious or requires the Court to apply a de novo standard of review. Plaintiff has not shown how non-compliance with the procedural requirement of 29 C.F.R. § 2560.503-1(h)(2)(iii), subsequent to Defendants' issuance of their final decisions, caused substantive harm to her ability to obtain a full and fair hearing of her administrative appeals. See Gatti v. Reliance Std. Life Ins. Co., 415 F.3d 978, 984-85 (9th Cir. 2005). The Court also does not find that Defendant Sedgewick's initial and final decisions on STD benefits evidence a shifting rationale on its part. A "shifting rationale" argument applies when a decisionmaker denies benefits based upon one stated rationale and then subsequently offers a different rationale or changes its stated rationale for the decision to deny benefits. See Wenner v. Sun Life Assurance Co. of Can., 482 F.3d 878, 880 (6th Cir. 2007); Houston v. Unum Life Ins. Co. of Am., 246 Fed.App'x 293, 300 (6th Cir. 2007). This scenario is not present in this action.

Finally, the Court finds it necessary to address the issue regarding the March 16, 2014, denial letter regarding Plaintiff's appeal of the LTD benefits. Plaintiff is correct that the copy of the letter she received from Prudential that she attached to her Amended Complaint, see Docket Entry No. 26-7, is a different letter than the March 16, 2014, letter that is contained in the Administrative Record. See AR 3654-3657. The letter Plaintiff received differed from the letter contained in the Administrative Record as follows:

1. Plaintiff's letter contains ten lines on page 2 regarding the elimination period and five lines on page 2 summarizing Plaintiff's position on appeal that are not included in the letter contained in the Administrative Record;

2. Plaintiff's letter contains the statement "All available medical data was reviewed in the performance of these reviews" as the last sentence on the first paragraph on page 3, while the letter in the Administrative Record contains the statement "Your (sic) Although all available medical data was reviewed, not all medical data will be referenced in the content of this letter" in the corresponding paragraph;

3. Plaintiff's letter does not contain the phrase "are for sedentary work" that is included in the paragraph describing the physical requirements of Plaintiff's job that is a part of both letters;

4. Plaintiff's letter contains the statement "While it is your position this recorded limitation in your records as well as Dr. Gore's letter is supportive (sic) you meet the definition of disability, the policy actually states 'You are disabled when Prudential determines . . .'" in the paragraph that begins "The review of your claim reveals," while the letter in the Administrative Record does not include this statement;

5. The same paragraph in Plaintiff's letter contains the statement "Prudential has had three separate physician reviews and the opinion there is no medically supported restrictions and limitations based on the medical evidence available for review is consistent between all three physician reviewers (the third is the Prudential on site physician review conducted during the initial claim review)," while the corresponding paragraph in the letter in the Administrative Records states "The opinion supporting no restrictions and limitations based on the objective medical information is consistent between three physician reviewers (the third is the Prudential on site physician)."; and

6. Plaintiff's letter contains the following statement as Prudential's final determination "After reviewing your entire medical record, we have determined there is a lack of medical evidence supporting your inability to perform your regular occupation and do not meet the definition of disability. As a result, we have upheld our decision to deny your claim for LTD benefits," while the corresponding statement in the letter in the Administrative Record states "After reviewing your entire file, we have determined that you are not precluded from performing your regular occupation and do not meet the definition of disability. As a result, we have upheld our decision to deny your claim for LTD benefits."

Despite the fact that Plaintiff raised this issue, Defendant Prudential failed to adequately address the issue or even attempt to provide an explanation for why Plaintiff received a denial letter that was different from the denial letter contained in the Administrative Record. See Docket Entry No. 62, at 31 (Defendants' reply to Plaintiff's response to ¶ 93).

While the unexplained presence of the differing letters is troubling to the Court, the Court's ultimate conclusion regarding the benefit decision made by Defendant Prudential would remain unchanged even if the Court considered the letter Plaintiff received, not the letter contained in the Administrative Record, as Prudential's denial letter on her appeal. While the noted differences in language between the two letters are more than just mere typographical errors or sloppy editing, the differences are not significant with respect to Prudential's explanation of its denial, and both letters essentially convey the same meaning. The fact that the letter in the Administrative Record is

different from the one sent to and received by Plaintiff is not a basis for either overturning the decision of Prudential or remanding the matter back for further review and decision.

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS the Plaintiff's Motion for Judgment on the Administrative Record (Docket Entry No. 56) be DENIED and that judgment be entered in favor of the Defendants. For the reasons stated herein, the Defendants' Motion for Summary Judgment (Docket Entry No. 53) should accordingly be DENIED as moot.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge